UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHELLE D. DOTSON,

                Plaintiff,

                                            Case # 17-CV-129-FPG

v.

                                            DECISION AND ORDER

NANCY A. BERRYHILL,[1] ACTING
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

## INTRODUCTION

Michelle Dotson brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security that denied her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 14. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

On May 9 and September 1, 2013, Dotson protectively applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[2] 144-50, 163-65. She alleged disability since

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and is therefore substituted for Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

[2] References to "Tr." are to the administrative record in this matter.

1

October 20, 2012 due to degenerative disc disorder and herniated discs. Tr. 171. On March 9, 2015, Dotson and a vocational expert ("VE") appeared and testified at a hearing before Administrative Law Judge Stephen Cordovani ("the ALJ"). Tr. 36-82. On June 4, 2015, the ALJ issued a decision finding that Dotson was not disabled within the meaning of the Act. Tr. 11-23. On December 14, 2016, the Appeals Council denied Dotson's request for review. Tr. 1-7. Thereafter, Dotson commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II.      Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative

substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Dotson's claim for benefits under the process described above. At step one, the ALJ found that Dotson had not engaged in substantial gainful activity since the alleged onset date. Tr. 13. At step two, the ALJ found that Dotson has the following severe impairments: status post lumbar surgeries and moderate degenerative disc disease of the cervical spine. Tr. 13-14. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 14.

Next, the ALJ determined that Dotson retains the RFC to perform light work[3] with additional limitations. Tr. 14-20. Specifically, the ALJ found that Dotson must be able to sit or stand at her own discretion; can occasionally climb stairs or ramps and balance or bend; and cannot kneel, crouch, crawl, or climb ladders or scaffolds. Tr. 14. At step four, the ALJ relied on the VE's testimony and found that Dotson can perform her past relevant work as a medical assistant. Tr. 21. The ALJ made an alternative step five finding and determined that Dotson can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 21-22. Specifically, the VE testified that Dotson could work

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

as a dealer accounts investigator, garment folder, and arcade attendant. Tr. 22. Accordingly, the ALJ concluded that Dotson was not "disabled" under the Act. Tr. 22-23.

**II.    Analysis**

Dotson argues that remand is required because the ALJ improperly analyzed the opinion of her treating physician Cameron B. Huckell, M.D. ECF No. 9-1 at 14-18. Specifically, Dotson asserts that the ALJ erred when he afforded "great weight" to Dr. Huckell's opinion, but rejected some of his limitations and did not explain why he rejected them. *Id.* Dotson argues that this error was particularly harmful in light of the relevant VE testimony in this case. *Id.* at 18-20. The Court agrees.

An ALJ is not required to "reconcile explicitly every conflicting shred of medical testimony," *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (citation omitted), and "[t]here is no absolute bar to crediting only portions of medical source opinions," *Younes v. Colvin*, No. 1:14-CV-170 (DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015). However, where the ALJ's "RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." *Dioguardi*, 445 F. Supp. 2d at 297 (quoting S.S.R. 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)). Thus, when an ALJ adopts only portions of a medical opinion, he must explain why he rejected the remaining portions. *Raymer v. Colvin*, No. 14-CV-6009P, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) (citation omitted); *see also Reider v. Colvin*, No. 15-CV-6157P, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (noting that the claimant is entitled to have the ALJ "explain any rejection of the limitations assessed in [a medical source's] opinion").

On September 2, 2014, Dr. Huckell opined that Dotson was 75% disabled. Tr. 664-65. He indicated that she can only lift up to 20 pounds and should avoid repetitive forward bending,

5

twisting, crawling, or climbing. Tr. 664. Dr. Huckell also opined that Dotson "should avoid prolonged sitting, standing, or walking for more than 2 hours at one time without a break and the total work day should not exceed 8 hours." *Id.* Dr. Huckell provided an identical opinion on March 2, 2015. Tr. 659.

The ALJ assigned "little weight" Dr. Huckell's opinion that Dotson is 75% disabled, because he found it "largely unexplained and undefined in any meaningful functional terms." Tr. 20. The ALJ found, however, that the September 2, 2014 and March 2, 2015 opinions were "clear and well-explained" and thus afforded them "great weight." Tr. 18-20. Specifically, the ALJ noted that Dr. Huckell "has a long treating history" with Dotson and performed multiple low back surgeries on her. Tr. 20. Thus, Dr. Huckell "has the best insight and perspective on her longitudinal treatment history and medical course." *Id.*; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (the ALJ will generally give more weight to treating source opinions because those sources are "most able to provide a detailed, longitudinal picture" of the claimant's impairments). The ALJ also found Dr. Huckell's opinion consistent with the record as a whole and supported by Dotson's daily activities. Tr. 20; *see also* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (the ALJ will give more weight to an opinion that is consistent with the record as a whole); 404.1527(c)(6), 416.927(c)(6) (when the ALJ weighs a medical opinion he is entitled to consider any factors—like the claimant's daily activities—that tend to support or contrdict the opinion).

The ALJ limited Dotson to light work in accordance with Dr. Huckell's prescribed lifting limitation. Tr. 14, 644, 659. He also limited Dotson to only occasional climbing and bending and precluded her from crawling, which is consistent with Dr. Huckell's opinion that she should avoid these activities. *Id.* Although the RFC lacks any twisting limitation, even though Dr. Huckell opined that Dotson should avoid repetitive twisting, the jobs the ALJ identified at steps four and

6

five do not require twisting. *See* Dictionary of Occupational Titles No. 195.367-010, 1991 WL 671595 (medical attendant/case aide); No. 241.367-038, 1991 WL 672258 (investigator, dealer accounts); No. 369.687-018, 1991 WL 673072 (garment folder); No. 342.667-014, 1991 WL 672848 (attendant, arcade).

Dotson asserts that the ALJ erred when he failed to credit or explain why he rejected Dr. Huckell's opinion that she "should avoid prolonged sitting, standing, or walking for more than 2 hours at one time without a break and the total work day should not exceed 8 hours." Tr. 664. The RFC provides that Dotson must be able to sit or stand at will. Tr. 14. Dotson argues, however, that this is insufficient because it does not account for an actual *break* after sitting, standing, or walking for two hours.

Because these breaks might increase the amount of time that Dotson is off task and Dr. Huckell opined that she cannot work in excess of eight hours per day, Dotson asserts that proper consideration of this limitation might have demonstrated that she cannot complete a full workday and therefore rendered her disabled. Specifically, Dotson asserts that the ALJ's error was particularly harmful because VE testimony established that an individual is unemployable if she is off task more than ten percent of the workday. Tr. 80. The Court agrees. *See Dioguardi*, 445 F. Supp. 2d at 298 (noting that the ALJ's "failure to reconcile the RFC assessment with medical source statements was error, and based upon the testimony given by the vocational expert, the failure was not harmless").

The Commissioner asserts, without any support, that the sit/stand limitation in the RFC adequately accounts for Dr. Huckell's opinion. ECF No. 14-1 at 13. She also asserts that any additional limitation was unnecessary because, in accordance with Dr. Huckell's opinion, "workers receive normal breaks and meals every two hours." *Id.* In support of this assertion, the

7

Commissioner cites Social Security Ruling 96-9p, which provides guidance to ALJs who determine that a claimant's RFC is for less than a full range of sedentary work. *See* S.S.R. 96.9p, 1996 WL 374185 (S.S.A. July 2, 1996). Specifically, this Ruling indicates that "to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals." *Id.* at *6-7. Here, however, the ALJ found Dotson capable of light work, not sedentary work,[4] and each job identified at steps four and five is performed at the light exertional level. Tr. 21-22.

Although an employer's customary break schedule might accommodate Dr. Huckell's opinion, the ALJ did not discuss this issue or make any finding as to the length of time Dotson would need to take a break. The ALJ also did not make a specific finding of the total amount of time Dotson can spend sitting, standing, and walking, which is important because light work "requires a good deal of walking or standing" or "sitting most of the time." 20 C.F.R. §§ 404.1567(b), 416.967(b); *see also Shipman v. Comm'r of Soc. Sec.*, No. 5:14-CV-0077 (GTS), 2015 WL 5512289, at *4 (N.D.N.Y. Sept. 17, 2015) ("Without a specific finding of the total duration of time the claimant can spend in each position, merely including a sit/stand/walk at will option is not sufficient to show that a claimant can, in fact, make it through an eight hour work day by alternating between those positions.")

For the reasons stated, the Court finds that the ALJ erred when he afforded "great weight" to Dr. Huckell's opinion, but ignored his assessment that Dotson should avoid prolonged sitting, standing, or walking for more than two hours at one time without a break. Accordingly, remand

---

[4] The Court notes that, under the SSA's regulations, "[i]f someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or *inability to sit for long periods of time*." 20 C.F.R. §§ 404.1567(b), 416.967(b) (emphasis added). Thus, in accordance with Dr. Huckell's prescribed sitting limitation, it is possible that Dotson may not be capable of sedentary work.

8

is required. *See Searles v. Astrue*, No. 09-CV-6117, 2010 WL 2998676, at *4 (W.D.N.Y. July 27, 2010) (remanding where "the ALJ failed to explain why he ignored portions of an opinion for which he granted 'significant weight'").

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: June 21, 2018
       Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court